# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| RALPH CIARLEGLIO,<br>    Plaintiff,<br><br>v.<br><br>METRO-NORTH RAILROAD COMPANY,<br>    Defendant. | CIVIL ACTION NO.<br>3:05cv1731 (SRU) |

## ORDER OF REMAND

Ralph Ciarleglio filed the present action seeking to enforce an award made by a Special Adjustment Board ("the Board"), pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. § 153, against defendant Metro-North Railroad. Because there are significant issues regarding the award's meaning, particularly in light of an unusual post-award factual scenario, I conclude that I do not have jurisdiction to resolve the interpretational questions and remand this case to the Board for further proceedings.

### I.  Factual Background

The following facts are undisputed. Ciarleglio was born on December 1, 1937 and began working for the railroad now known as Metro-North Railroad Company on July 9, 1961. On February 21, 1992 Ciarleglio went on unpaid sick leave and was granted a permanent disability annuity from the Railroad Retirement Board ("RBB") on August 1, 1992. At the time he went on leave in 1992, Ciarleglio was working as an Assistant Stationmaster at Metro-North's New Haven station. Ciarleglio's union affiliation is with the Transportation Communications Union ("TCU").

After unsuccessfully attempting to return to work on August 6, 2002, Ciarleglio filed a claim with the Board that Metro-North was in violation of Rule 10 of the Collective Bargaining

Agreement for refusing to allow him to exercise his seniority rights and return to work. Rule 10 of the Collective Bargaining Agreement states that an employee returning to duty from a leave of absence, sickness, vacation, disability, jury duty or suspension, "shall either return to his former position, if available to him, or select any position bulletined during his absence which was awarded to a junior employee." The Board's October 18, 2004 Award (the "Award") provides in pertinent part:

> The claim is sustained. The status of the Claimant is currently unclear to the Board. If the Claimant continues to collect his disability annuity as of the date of the Award, since he has not been permitted to return to work, the only remedy in this case is that the Claimant be permitted to exercise his seniority under Rule 10 of the labor Agreement and return to work. There is no other monetary relief associated with this Award. If the Claimant is not collecting his disability annuity as of the date of this Award the Award shall be remanded to the Board for further deliberations on the issue of remedy and relief.

Following the issuance of the Board's Award, a dispute arose over the interpretation of its meaning and whether or not Ciarleglio had fully complied with the terms of the Award. Ciarleglio contends that the Award required Metro-North to reinstate him immediately and that proving that he was receiving a disability annuity at the time of the Award was merely a secondary requirement. Only if he had not been receiving a disability annuity would the matter be remanded to the Board to determine whether he was owed back wages. Metro-North interprets the Award as containing a condition precedent to its obligation of reinstatement: only if Ciarleglio could prove he was receiving a disability annuity as of the date of the Award would its obligation to permit him to exercise his seniority rights be triggered. Metro-North maintains that Ciarleglio never properly supplied that information.

On or about December 15, 2004 Ciarleglio's union representative, William Kelaher,

faxed a document entitled "Payment History" to Jane Murawski, the Assistant Director for Labor Relations at Metro-North. On January 17, 2005, Kelaher again sent that document to Murawski, along with a letter addressed to Ciarleglio from the RRB informing him that his "railroad retirement benefits" would be adjusted to account for cost-of-living increases. Ciarleglio contends those documents sufficiently establish that he was receiving a disability annuity on the date of the Board's Award. Metro-North contends that those documents do not clearly demonstrate that Ciarleglio was the recipient of a disability annuity at the time of the Award. Metro-North further insists that those documents can be reasonably read as demonstrating Ciarleglio was receiving a regular retirement benefit, not a disability annuity.

As of August 23, 2005, the Award had not been implemented and Ciarleglio's employment status with Metro-North remained unclear. In a letter dated September 5, 2005, Murawski wrote Kelaher that Metro-North believed Ciarleglio to be retired based on the documentation provided by him in December 2004 and January 2005.

In the interim, on March 10, 2005, as a result of another arbitration between two unions representing Metro-North employees, the position of Assistant Stationmaster at the New Haven station was eliminated and renamed "Yardmaster." Union oversight of that position was transferred from TCU to the Association of Commuter Rail Employees ("ACRE"). Ciarleglio is not a member of ACRE.

In May 2006, following Ciarleglio's sworn deposition testimony that he was receiving a disability annuity at the time of the Award, Metro-North permitted him to exercise his seniority. After Ciarleglio underwent and passed a return-to-duty physical, Metro-North employee Shirley Joshua informed him on June 13, 2006 that he was now eligible to exercise his seniority rights.

Joshua again notified Ciarleglio that he was permitted to exercise his seniority rights on June 30, 2006 and advised him that his seniority rights would be terminated if not exercised before July 6, 2006. Joshua extended this deadline to August 14, 2006 after objection from Ciarleglio's attorney. When Ciarleglio failed to exercise his seniority rights by that time, Metro-North terminated his seniority rights on August 17, 2006.

In support of their argument to remand the case, Metro-North raises the additional allegation that Ciarleglio fraudulently procured his arbitration award by concealing the fact that he received a lump sum retirement benefit payment in 1995. Metro-North contends that electing to receive a lump sum retirement benefit requires that the employee be officially terminated from the railroad.

## II. Discussion

### A. Standard of Review

The Railway Labor Act ("RLA") provides a comprehensive scheme for dispute resolution between railroad employees and their employers. 45 U.S.C. § 153. The purpose of the RLA is to "promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). The RLA establishes a mandatory arbitration procedure to resolve two kinds of disputes: "major" disputes, which are disputes involving the *creation* of contractual rights, and "minor" disputes, which are those disputes relating to the *enforcement* of those rights. *Messina v. Metro-North Commuter R.R.*, No. 89 Civ. 5673, 1991 WL 120237, at *1 (S.D.N.Y. 1991) (citing *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 302-04 (1989)). The district courts are authorized under the RLA to enforce those awards or to set them aside on three narrow grounds.

45 U.S.C § 153 (p); *Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 93 (1978).

The RLA contains a mechanism for resolving disputes requiring interpretation of an award: "In case a dispute arises involving an interpretation of the award, the division of the Board upon request of either party shall interpret the award in the light of the dispute." 45 U.S.C. § 153(m). Analogously, "[a]s a matter of judicial gloss on the statute," there is a third alternative for district courts addressing a demand for enforcement: remand to the Board for clarification where "the award and order are so vague and indefinite that they cannot reasonably be enforced." *Bhd. Ry. Carmen of the U.S. & Canada v. The Belt Ry. Co. of Chicago*, 658 F. Supp. 136, 138 (N.D. Ill. 1987).

An award is not unclear simply because either party can demonstrate that a portion is ambiguous or unclear. *Id.* at 139. District courts typically enforce purportedly "unclear" RLA arbitration awards where no interpretation of the award is necessary and when the ambiguous term is readily determinable, such as the amount of monetary relief owed under the award. *See Diamond v. Terminal Ry. Ala. State Docks*, 421 F.2d 228, 235 (5th Cir. 1970) (holding that the district court did not exceed its jurisdiction when it calculated the monetary relief owed pursuant to an award granting plaintiff "all wage and other losses sustained account of his dismissal"); *Sweeney v. Florida East Coast Ry. Co.*, 389 F.2d 113, 115, 117 (5th Cir. 1968) (holding that where the Board awarded plaintiff "compensation for all time lost," the district court was authorized to calculate the actual dollar amount).

Importantly, however, a district court may not enforce an award that requires it to first interpret the award's meaning. Because "disagreement about the meaning of an award amounts to disagreement about the meaning of the underlying collective bargaining agreement,"

jurisdiction to resolve the dispute lies with the Board. *Bhd. of Maintenance of Way Employees v. Burlington Northern R.R. Co.*, 24 F.3d 937, 938 (7th Cir. 1994). The RLA's mandate that district courts enforce arbitration awards is "neither a duty nor a license to interpret it." *Id.* at 939 (quoting *Bhd. of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry.*, 956 F.2d 156, 160 (7th Cir. 1992)). Disagreement about the meaning of an award is considered a "minor" dispute and one that the parties and the Board "must resolve without judicial aid." *Local 808, Bldg. Maint., Serv. & R.R. Workers v. Metro-North Commuter R.R. Co.*, No. 95 CV 0515, 1995 WL 432629, at *2 (E.D.N.Y. 1995).

    B.    <u>Ciarleglio's Award</u>

In the present case there are at least three reasons why the Award's meaning is too ambiguous to enforce and therefore, should be remanded to the Board for clarification.

    1.    *Enforcement Would Reveal Latent Ambiguities*

"Where an attempt to 'enforce' an award generates or reveals a dispute requiring interpretation of the award's scope or application, that dispute 'must be referred to a reconvened board of arbitration for determination.'" *Airline Pilots Ass'n, Int'l v. Pan Am. Airways Corp.*, 405 F.3d 25, 33 (1st Cir. 2005) (quoting *W. Air Lines, Inc. v. Labor Comm'r of Div. of Labor Law Enforcement*, 167 F.2d 566, 567 (9th Cir. 1948)). Any attempt by this court to enforce the award would reveal latent ambiguities requiring extensive interpretation of the award's meaning.

There are many questions that this court would have to resolve before the Award could be enforced in the manner that Ciarleglio seeks. First, does the Award contemplate that Metro-North first permit Ciarleglio to exercise his seniority rights and then resolve any remaining questions about his disability annuity? Or, did the Award require Ciarleglio to produce evidence

of his disability annuity before Metro-North was required to allow him to return to work? Second, if he was required to show proof that he was receiving a disability annuity at the time of the Award, did Ciarleglio properly comply with that directive in December 2004 and January 2005? Third, if Ciarleglio sufficiently satisfied the Award's condition, did he forfeit the Award by failing to exercise his seniority rights when asked to by Metro-North from June to August of 2006? Finally, if Metro-North unduly delayed in permitting him to exercise his seniority rights, is Ciarleglio: (a) entitled now to exercise seniority rights to obtain a Yardmaster position despite not being a member of the ACRE union and/or (b) owed any compensation for the railroad's failure to permit him to exercise those seniority rights when his position as Assistant Stationmaster in New Haven still existed prior to March 10, 2005?

Given the intervening events of the past three years, it is impossible for this court to determine the meaning of the Award without first answering these questions. Because enforcing the Award would reveal latent ambiguities requiring interpretation, the district court has no jurisdiction to enforce the award and it should be remanded to the Board for clarification.

    2.    *Award's Language Supports Two Competing Interpretations*

Where the Award's language reasonably supports each party's interpretation of its meaning, the district court has no jurisdiction to enforce the award and it should be remanded. *Sabo v. Metro-North Commuter R.R.*, 96 Civ. 5201, 1997 U.S. Dist. LEXIS 2040, at *10-11 (S.D.N.Y. 1997). In *Sabo*, the court remanded the dispute to the Adjustment Board where the language of the Award regarding the time period for which compensation was owed reasonably supported both parties' explanation. *Id.* at *10-12. Because choosing one of the interpretations would have had a significant impact on the Award's ultimate value, the court reasoned it had no

jurisdiction to make such a choice and remanded to the Board to resolve the dispute. *Id.* at 11-12. Similarly in *Messina*, where the parties advanced two competing interpretations of when the plaintiffs' pay and benefits were meant to recommence under the award, the court reasoned the appropriate procedure was to remand to the Board for clarification. 1991 WL 120237, at *3-4 (citing *York Research Corp. v. Landgarten*, 927 F.2d 119, 123 (2d Cir. 1991)).

Here, each party has a reasonable explanation for what the Award means. It is not clear precisely why the Board thought proof of his disability annuity was a pertinent factor. Perhaps it was a necessary indicator that Ciarleglio remained a full-time employee capable of accruing seniority as opposed to a retiree who was no longer considered an employee. Perhaps it was to determine whether Ciarleglio was owed back pay in addition to being permitted to exercise his seniority rights. The Board's specialized knowledge of the retirement and disability policies and procedures for Metro-North employees only strengthens the conclusion that it is a better forum for the resolution of the dispute over the Award's meaning.

### 3. *Questionable Post-Award Conduct*

The determination whether post-award conduct constitutes a violation of the award is considered a "minor" dispute under the RLA and thus outside the jurisdiction of the district courts to resolve. *United Transp. Union v. Terminal R.R. Ass'n of St. Louis*, No. 99-CV-393, 2000 U.S. Dist. LEXIS 19510, at *8 (S.D. Ill. 2000). For example, where it was not clear whether the plaintiff had sufficiently satisfied the necessary condition for the Award's execution, the dispute was for the full three-member Board to resolve, not a single arbitrator or the court. *Creasey v. Metro-North Commuter R.R.*, No. 90 Civ. 4617, 1991 WL 206316, at *1-2 (S.D.N.Y. 1991). "The award had not contemplated the circumstances which arose before it could be

executed, and the arbitrators never effectively interpreted it in the light of those circumstances." *Id.* at *2.

Similarly, here there is a serious dispute about whether both Metro-North and Ciarleglio properly complied with the terms of the Award. Thus, it should be considered a "minor" dispute under the RLA and one that falls under the exclusive purview of the Board to resolve. In addition, the unique factual circumstances that have arisen since the Board last convened further dictate that remand to the Board for a clarification of the Award is the most appropriate course of action for this court to take.

### III.    Conclusion

For the forgoing reasons, this case is hereby remanded to the Special Board of Adjustment No. 951 for the resolution of Award No. 529. The clerk shall close this case.

It is so ordered.

Dated at Bridgeport, Connecticut, this 14th day of January 2008.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge